# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

ENVIRONMENTAL )
ABATEMENT, INC., )
         )
     Plaintiff and )
     Counter Defendant/Appellee, )
v. )
         )
ASTRUM R. E. CORPORATION, )
         )
     Defendant and )
     Counter Plaintiff/Appellee )
         )
vs. )
         )
ASTRUM R.E. CORPORATION, )
         )
     Third Party Plaintiff/Appellee, )
         )
vs. )
         )
MAHAN ROOFING AND SHEET )
METAL COMPANY, INC., )
         )
     Third Party Defendant and )
     Cross Plaintiff/Appellant, )
         )
vs. )
         )
ENVIRONMENTAL )
ABATEMENT, INC., )
         )
     Cross Defendant/Appellee. )

**FILED**

**February 29, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

Appeal No.
M1998-00871-COA-R3-CV

Rutherford County Chancery
No. 97CV-807

## COURT OF APPEALS OF TENNESSEE

### APPEAL FROM THE CHANCERY COURT
### FOR RUTHERFORD COUNTY

### THE HONORABLE ROBERT CORLEW PRESIDING

JOHN R. RUCKER, JR.
14 PUBLIC SQUARE NORTH
MURFREESBORO, TENNESSEE 37130

PHILIP N. ELBERT
NEAL & HARWELL, PLC
2000 FIRST UNION TOWER
150 FOURTH AVENUE NORTH
NASHVILLE, TENNESSEE 37219-1713

ATTORNEYS FOR PLAINTIFF/COUNTER DEFENDANT/APPELLEE

ROBERT M. HOLLAND, JR.
G. BRIAN JACKSON
TRABUE, STURDIVANT & DEWITT
511 UNION STREET
2500 NASHVILLE CITY CENTER
NASHVILLE, TENNESSEE 37219

ATTORNEYS FOR THIRD-PARTY PLAINTIFF/APPELLEE

SEAN ANTONE HUNT, ESQ.
SPICER, FLYNN & RUDSTROM, PLLC
424 CHURCH STREET, SUITE 1350
NASHVILLE, TENNESSEE 37219-2305

ATTORNEY FOR THIRD PARTY DEFENDANT/
COUNTER PLAINTIFF/APPELLANT

**REVERSED AND REMANDED**


PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, J.
KOCH, J.

## OPINION

This case raises the issue of whether a chancellor designated to serve as a "settlement judge" under local rules of court can enter a consent decree with the knowledge that one of the parties has withdrawn its consent to an oral agreement reached at a "judicial settlement conference" but not reduced to a writing, transcribed or otherwise entered on the record at the time of the oral agreement. We answer that question in the negative and reverse.

The parties were engaged in litigation arising out of a construction project. Astrum R. E. Corporation ("Astrum") owned a factory in Rutherford County. Astrum entered into an agreement with a general contractor, Mahan Roofing and Sheet Metal Company, Inc. ("Mahan"), to replace the roof on its factory. Mahan engaged a sub-contractor, Environmental Abatement Inc. ("EAI"), to remove hazardous material from the roof. While removing the hazardous materials, EAI's workers damaged the side walls of Astrum's building. Astrum responded by withholding payment to Mahan. EAI filed a mechanics' and materialmen's lien on Astrum's property.

EAI then filed a lawsuit to enforce these liens pursuant to Tenn. Code Ann. § 66-11-115. Astrum filed a counterclaim against EAI for damages to the factory, and a third party complaint against the general contractor, Mahan. Mahan filed a cross complaint against EAI.

A court-ordered and judicial officer-mediated settlement conference was held pursuant to the local rules of court. After approximately five hours of negotiation during which the settlement judge[1] acted as mediator, a verbal agreement was reached. No court reporter was present at the mediation. At the close of the mediation, the settlement judge restated and confirmed the settlement's terms. Then he directed EAI's counsel to prepare the consent decree.

---

[1] This case involves the actions of two separate judges who are designated the "trial judge" and the "settlement judge" in the local rule discussed later herein. To simplify our discussion of the procedural history of this case, we will use those designations.

Early the following morning Mahan notified all parties that it was withdrawing its consent to the agreement. Nonetheless, EAI prepared and circulated to all counsel a proposed order reflecting the agreement. Mahan notified the other parties that it would not sign the order and had withdrawn its consent. Astrum submitted the proposed consent decree to the settlement judge with Mahan's letter indicating its withdrawal of consent. Days later, fully aware of Mahan's withdrawn consent, the settlement judge entered the Order of Compromise and Settlement prepared by counsel for EAI. This order was not signed by any representative of Mahan.

Thereafter, Mahan filed a motion to set aside the decree, asserting that it no longer assented to the terms of the proposed settlement at the time of entry of the order and also asserting that the order did not accurately reflect the oral agreement reached at the conclusion of the settlement conference. The trial judge denied this motion. Mahan renewed this motion before the settlement judge who presided over the mediation, and it was again denied. Mahan then brought this appeal, claiming that the trial court erred in entering a consent decree when the court was aware that one of the parties had withdrawn its consent.

Our review of this case must begin with the acknowledgment that the oral settlement agreement announced at the conclusion of the mediation is not part of the record on appeal. No court reporter was present and no contemporaneously prepared written document formalized the agreement. No entry in the court's record reflecting the conference or the agreement has been presented to us. No statement of the evidence was provided to memorialize the unrecorded settlement conference.[2] *See* Tenn. R. App. P. 24(c). This lack of formality, of course, is due to the fact that the proceeding was a settlement conference, a fact that has other consequences on our decision.

I.

The procedure followed below plays an important part in our

---

[2] In view of the confidentiality provisions of Tenn.R.Sup.Ct. 31, the omission of evidence on the merits of the lawsuit is probably mandated.

determination and, therefore, must be set out in some detail. This case was filed in the Chancery Court of Rutherford County. Under a local rule,[3] "when a case is filed, the clerk shall assign a judge (other than the designated trial judge) for purposes of settlement." The designated trial judge herein conducted a status conference and entered an order, which, among other things, referred the matter to the settlement judge to "conduct a settlement conference." Additionally, the settlement judge entered an order at about the same time setting the case for settlement conference. That order stated, "The role of the undersigned is to preside over settlement discussions totally and completely separate and apart from the trial aspects of the case."

The Order of Compromise and Settlement was signed and entered by the settlement judge. In pertinent part it recited that "all matters and controversy by and between the parties hereto have been compromised and settled under the terms of provisions set forth above." It then directed all parties to fulfill and comply with the provisions and terms of the Settlement Agreement.[4]

Mahan's Motion to Set Aside Order of Compromise and Settlement was heard by the trial judge. The motion stated that Mahan had withdrawn its consent to the agreement prior to the entry of the Order. The motion and the oppositions thereto were accompanied by various affidavits from the lawyers involved in the settlement conference. In denying the motion, the trial judge found there was not sufficient basis to set aside the order entered by the settlement judge.

Mahan renewed its Motion to Set Aside the Order of Compromise and Settlement, wherein it reiterated that all counsel, prior to the drafting of the order and entry of the order were advised that Mahan had withdrawn its

---

[3] Local Rules of the Circuit and Chancery Courts of Rutherford and Cannon Counties, Rule 13.

[4] It also stated that upon completion of the settlement terms, a Satisfaction of Judgment and Release would be entered by the court (not specifying which judge) together with an order releasing the lien on the property.

consent to the compromise and that this withdrawal of consent was conveyed to the court. For reasons not apparent in the record, the renewed Motion to Set Aside Order of Compromise and Settlement filed by Mahan was then heard by the settlement judge. In the order entered by the settlement judge denying the Renewed Motion to Set Aside, the settlement judge made certain findings. Included among those were:

> After conducting settlement negotiations involving all of the parties both collectively and individually, all parties through their representatives and attorneys indicated their agreement to the terms of the settlement negotiated with the assistance of [the settlement judge].
>
> . . .
>
> The Court then assembled together in open court[5] the representatives of the parties and their attorneys for the purpose of reviewing the provisions of the settlement. The terms of the settlement were stated and re-stated in the presence of all parties and their attorneys. Every person present fully understood the gravity of the issues and the complexity of the issues before the Court. All counsel and party representatives understood the terms of the settlement and expressed their assent to the terms.
>
> . . .
>
> After announcing the terms of the settlement in open court and obtaining the assent of all party representatives and attorneys, the settlement was a firm settlement which was accepted by the Court at that time.

The Order concluded by denying the Motion to Set Aside and further stating, "the settlement reached by the parties on January 29, 1998, was understood, ratified and approved by all of the parties. The settlement reached on January 29, 1998, was complete and final and compromised all issues between the parties." The Order continued by stating "that the

---

[5]In the hearing on the renewed Motion to Set Aside, for which a transcript is available, the settlement judge stated, "I'll acknowledge to you that at one point years ago when we first started doing these settlement conferences that I did an extra step, which I did not do in this case. When we first started doing the settlement conferences, after we went through steps, which we did in this settlement conference in this case, I took a two-minute recess and took the opportunity to put the robe on and sit behind the bench and restate the agreement. I asked counsel and parties to state their consent. We did not do that in this case . . . I had the feeling that the parties felt that somehow there was some show of power or show of authority, I suppose to the aspect of the Court putting on the robe, sitting behind the bench, and going over again what had already been done. I haven't done that for a number of years. I did it initially to make absolutely sure that we had a formal agreement, which I announced in the courtroom. It was from that standpoint in open court that all parties were present, counsel was present, that there was a complete statement of the agreement that was reached."

settlement reached by all of the parties on January 29, 1998, was announced in open Court and was accepted by the parties. Pursuant to T.R.C.P. 31[6] and Rule 13 of the Local Rules of Practice, the settlement became binding on the parties on January 29, 1998."

No order appears in the record before us indicating that the case was ever transferred to the settlement judge for disposition or that the settlement judge was otherwise (e.g., by agreed order of the parties) given authority to dispose of the case or to enter orders in a case that was not assigned to him for adjudication. Rather, the procedure followed herein is based upon a local rule adopted by the trial courts of Rutherford and Cannon Counties entitled "Negotiations and Settlements in Civil Cases." In pertinent part, that rule provides:

> When a case is filed, the clerk shall assign a judge (other than the designated trial judge) for purposes of settlement in accordance with Rule 3.01 herein. It shall be the duty of the settlement judge to attempt to facilitate a settlement of the issues before the Court. The order for settlement conference may be entered by the settlement judge on his own initiative or upon informal written request (an informal letter is sufficient) from both counsel or either of them, or upon request of the trial judge. The settlement judge shall have the authority to conduct a settlement conference in the manner in which he finds appropriate, including but not limited to non-binding mediation, binding mediation, mini-trial, case evaluation, or summary jury trial. **When such conference results in a settlement of the issues, the settlement judge shall then formally convene the Court at which time the settlement will be formally announced, and if approved, will then be binding on the parties. The Order of Compromise and Settlement shall then be prepared for the signature of the settlement judge.**

Rule 13, Local Rules of the Circuit and Chancery Courts of Rutherford and Cannon Counties (emphasis added).

## II.

The beginning point for our analysis of the issues presented by this procedurally complicated situation is *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987), wherein our Supreme Court considered

---

[6] The parties agree that this reference to Tenn. R. Civ. P. 31 was inadvertent, and the accurate reference is to Rule 31 of the Rules of the Tennessee Supreme Court.

whether "a trial judge can enter a valid Order of Compromise and Dismissal after being informed by one of the parties that consent to the compromise has been withdrawn" and held that the trial court could not. *See Harbour*, 732 S.W.2d at 599.

In *Harbour,* the parties announced to the court that they had reached a settlement agreement, but its terms were not recited to the court. *See id.* The parties then informed the court that they would submit a consent order at a later date. Before entry of the order, the court was informed that one of the parties had withdrawn its consent to settle. The court, however, proceeded to enter an order dismissing the case with prejudice. *See id.*

The Supreme Court reversed and held:

> The resolution of disputes by agreement of the parties is to be encouraged. But **a valid consent judgment cannot be entered by a court when one party withdraws his consent and this fact is communicated to the court** prior to entry of the judgment.

*Id.* (emphasis added).

The Court adopted the language of *Burnaman v. Heaton*, 150 Tex. 333, 338, 240 S.W.2d 288, 291 (1951), which stated:

> A valid consent judgment cannot be rendered by a court when the consent of one of the parties thereto is wanting. It is not sufficient that to support the judgment that a party's consent thereto may at one time have been given; **consent must exist at the very moment the court undertakes to make the agreement the judgment of the court.**

*Id.* (emphasis added).

In further explaining its reasoning, the Supreme Court stated:

> The reason for the rule is that a consent judgment does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court. *Van Donselaar v. Van Donselaar*, 249 Iowa 504, 87 N.W.2d 311 (1958). And, **until entered by the court**, the matter being the question of an agreement between the parties, either party may repudiate the agreement because of an actual or supposed defense to the agreement. This is not to say that the compromise agreement may not be a binding contract, subject to being enforced as other contracts, but only that the **court may not enter judgment based on the compromise agreement, when it has notice that one of the parties is no longer consenting to the agreement for whatever reason.**

8

*Id. at 599-600.* (emphasis added).

The phrases "until entered by the court," "enter judgment," and "make the agreement the judgment of the court" as used in *Harbour*, must be interpreted by reference to the well-settled rule that "[a] court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979); *see Massachusetts Mut. Life Ins. Co. v. Taylor Implement & Vehicle Co.*, 138 Tenn. 28, 36, 195 S.W. 762, 765 (1917).

Tenn. R. Civ. P. 58 echoes these principles. It provides:

Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:

(1) the signatures of the judge and all parties or counsel, or

(2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or

(3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

This Rule clearly provides that all judgments are effective when they are entered (unless the court orders otherwise) and the filing of the signed judgment with the clerk of court constitutes the entry. *See Christopher v. Spooner*, 640 S.W.2d 833 (Tenn. Ct. App. 1982).

On the basis of the above authorities, it would appear that the issue in this case is easily resolved since the Order of Compromise and Settlement herein was entered by the settlement judge after he was informed that one of the parties no longer consented. However, the cases interpreting *Harbour* and the sources relied upon in *Harbour* must be examined in light of the factual distinctions between *Harbour* and the case at hand.

III.

In *Harbour,* the Supreme Court quoted *Corpus Juris Secundum* for

the general rule that:

> The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement received the sanction of the court **or** is rendered and promulgated as a judgment.

*Harbour*, 732 S.W.2d at 599 (quoting 49 C.J.S. *Judgments* § 174 (b).

(emphasis added)).

To the extent that the "or" in the above-quoted section can be read to imply that consent of the parties at the time of entry of the judgment is not required if the parties' agreement previously existed "at the time the agreement received the sanction of the court," meaning the time the court approved the agreement, that phrase must be interpreted by reference to other sections of the treatise. Additional relevant sections provide:

> Consent to judgment must be made by or on behalf of the parties in open court or by documentary evidence of legal sufficiency. If the agreement is made in open court, it may be made orally; otherwise it should be in writing and should be signed and filed.

49 C.J.S. *Judgments* § 184 (1997).

> The agreement of the parties has also been held to obviate the necessity for a hearing [for proof on the underlying issues in the lawsuit] except for the purpose of determining the fact or validity of the agreement and ordering judgment accordingly.

*Id.* at §183.

> A judgment by consent of the parties is a judgment the provisions and terms of which are settled and agreed to by the parties to the action in which it is entered by the consent and sanction of the court;
>
> ***
>
> Consent to entry of judgment implies that the terms and conditions have been agreed on and consent thereto given in open court or by stipulation. The court has no power to supply terms, provisions, or essential details not previously agreed to by the parties.

*Id.* at § 182.

> It is within the jurisdiction of the court to determine the fact and the sufficiency of such consent. A party's consent to a judgment is shown by the fact that he causes the judgment to be entered up; but consent cannot be shown by oral statements to the judge out of court . . .

*Id.* at §184.

Thus, in the context of the treatise relied upon by the Supreme Court in its *Harbour* decision, even if a settlement agreement can be enforced through later entry of a consent order if the agreement had consent of all parties at the time it was approved by the court, the parties' prior oral agreement must have been made "in open court" or in a "hearing" wherein the fact and the terms of the agreement were determined. The terms of the agreement must also be reflected in the record. Oral statements to a judge in any other context are not sufficient.

The Iowa Supreme Court has clarified its ruling in *Van Donselaar*, another source relied on by our Supreme Court in *Harbour*. In a later case, the Iowa Supreme Court disapproved the view that *Van Donselaar* suggested that consent may be withdrawn as a matter of right at any time prior to actual entry of judgment. *See In the Matter of Property Seized On Or About November 14-15, 1989*, 501 N.W.2d 482, 485 (Iowa 1993). In that case, the parties had entered into a stipulation regarding the forfeiture of a portion of seized property. The stipulation had been read into the record of a hearing in open court, explained by the judge, and agreed to by counsel for the parties. One party later moved to rescind the stipulation. Thus, the issue in *Matter of Property Seized* was whether the defendant should be allowed to rescind his earlier stipulation. The Supreme Court of Iowa concluded that the trial court properly held the defendant to "the terms of the agreement that his counsel approved on the record in the court proceeding." *Id.*

IV.

This court, in interpreting *Harbour*, has sometimes drawn a determinative distinction on the basis of whether the terms of the settlement which preceded the entry of an order of settlement were announced to the court on the record or whether just the existence of an agreement was announced.

In *REM Enterprises, Ltd. v. Frye*, 937 S.W.2d 920 (Tenn. Ct. App.

11

1996), the parties, in a dispute over an option to purchase land, ultimately entered into a settlement agreement which was read in open court and made part of the technical record. The parties acknowledged their agreement to the chancellor. The agreement stipulated that if Frye did not purchase the property by a specified date, REM was entitled to reduce the agreement to judgment immediately. On the specified date, Frye informed REM that his bank required a corporate resolution for good title and until this was provided, he considered REM in breach. REM did not provide the resolution or appear at the scheduled closing. Instead, on the next day, REM requested that the court enter judgment pursuant to the prior oral settlement agreement, notwithstanding Frye's withdrawal of his consent to the terms of the agreement. The trial court entered judgment pursuant to the terms of the oral settlement agreement. The issue actually before the *Frye* court was the validity of the judgment entered against the defendant in accordance with the terms of the previous oral settlement agreement never reduced to an order.

In *Frye*, this court upheld the trial court's decision to enter judgment. It distinguished *Harbour*, finding:

> In *Harbour* the settlement had not been read in court and had not been made part of the technical record. The terms of the agreement in this case were read in open court to the Chancellor who personally asked each of the parties if they consented to the settlement.

*Frye*, 237 S.W.2d at 922.

In *Callison v. Callison*, Obion Equity No. 1, 1988 WL 10050 at * 2 (Tenn. Ct. App. Sept. 29, 1988), this court affirmed a trial court's refusal to allow a husband to repudiate an oral property agreement. In that divorce case, the wife testified to the terms of the agreement at trial, the terms were not disputed, and it was announced that the agreement would be reduced to writing in the final judgment, which the parties had the opportunity to read and approve. *See Callison*, 1988 WL 10050 at *1. Before entry of the

decree, the husband sought to repudiate the agreement.[7] *Id.* The trial court held a hearing and subsequently entered a divorce decree essentially reflecting the property settlement the parties had initially agreed upon. In affirming, this court distinguished *Harbour* because the *Callison* court "heard the terms of the agreement and it was sanctioned by the court." *Id.* at * 2.

In both of these cases distinguishing *Harbour,* the detailed terms of the agreement were presented in open court and on the record, the trial court's acceptance of the agreement was also made in open court and on the record, and a record or transcript existed, independent of the order later entered, which documented the fact and terms of the agreement.

V.

These interpretations of *Harbour* by this court are consistent with our interpretation of the language in *Harbour* that "the power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement **received the sanction of the court** . . ." *Harbour*, 732 S.W.2d at 599 (emphasis added). They are also consistent with the Iowa Supreme Court's modification of *Van Donselaar* and with other provisions of the treatise from which the quoted language is taken.

In essence, they recognize, in furtherance of other well-settled principles, an exception to *Harbour's* often-quoted general rule. That exception, when applicable, would allow the entry of a consent order of compromise and settlement which merely documents an earlier agreement even where consent does not exist at the time of entry of the written order. Stated differently, there are situations where a party will not be allowed to withdraw its consent to an oral agreement prior to entry of a judgment based

---

[7] The husband's real objection was not that he had not consented to the settlement agreement, but that he had not gotten the property he was entitled to under the agreement.

on that agreement.[8] At the least, this exception applies to agreements made in open court, on the record, where the detailed terms of the agreement are presented to the court, accepted by the court, and preserved by transcript or other acceptable record of the court proceedings.

There is no novelty in holding parties bound by representations made in formal judicial proceedings. For example, oral stipulations made in open court and accepted by the court are valid and will be enforced. *See Bearman v. Camatsos*, 215 Tenn. 231, 235-36, 385 S.W.2d 91, 93 (Tenn. 1964); *Town of Surgoinsville v. Sandidge*, 866 S.W.2d 553, 555 (Tenn. Ct. App. 1993); *see also* Tenn. R. Civ. P. 39.01. This rule applies to stipulations regarding issues as well as stipulations of fact. *See In the Matter of Property Seized On Or About November 14-15, 1989*, 501 N.W.2d at 485. As a general rule, a stipulation made in the presence of a judge, but not in open court, must be reduced to writing to be effective. *See* 83 C.J.S. *Stipulations* §4 (2) at 6.

A compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law. *See Sweeten v. Trade Envelopes*, 938 S.W.2d 383, 385 (Tenn. 1996). The Supreme Court recognized this distinction in *Harbour*, stating, "This is not to say that the compromise agreement may not be a binding contract, subject to being enforced as other contracts, but only that the court may not enter judgment based on the compromise agreement, when it has notice that one of the parties is no longer consenting to the agreement for whatever reason." *Harbour*, 732 S.W.2d at 599-600.[9]

---

[8] One obvious exception is the situation where the court's authority to enter judgment is limited by a requirement of a written agreement of the parties, e.g., a final order granting divorce on the grounds of irreconcilable differences. *See Elrod v. Elrod*, No. 03A01-9108-GS-260, 1991 WL 238263 at *1 (Tenn. Ct. App. Nov. 18, 1991) (no Tenn. R. App. P. 11 application filed).

[9] Those authorities regarding settlements where court approval is required, by statute or otherwise, are not applicable to the issue in this case. In those situations, a court's responsibility in approving a settlement includes review of the substance of the settlement, not just the fact of an agreement. *See, e.g.*, Tenn. Code Ann. § 50-6-206 (court approval of

14

Where, however, the parties or the court seek to give a contractual arrangement between the parties the authority and remedies provided by a court's judgment, considerations other than, or additional to, the enforceability of the prior oral agreement come into play. Our Supreme Court has described the nature of a settlement agreement brought to the court for entry, finding "a consent judgment does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court." *Harbour*, 732 S.W.2d at 599. Thus, it is logical to conclude that an agreement must exist at the time the agreement is made a matter of record - whether that be by entry of consent judgment or by stipulation or agreement made in open court and on the record.

From all of the above, we conclude that Tennessee is one of those jurisdictions where:

> the terms of the settlement should be stated to the court and taken down by the reporter or otherwise reduced to writing so as to prevent a dispute as to what are the terms of the settlement, and that an oral stipulation for compromise and settlement made in open court in the presence of the parties and preserved in the record of the court is as binding as a written agreement.

15A C.J.S. *Compromise and Settlement* § 17 at 214-215 (citations omitted).

In the matter before us, Mahan does not dispute that an agreement existed at the close of the judicial settlement conference herein, but asserts that it withdrew its consent the next morning and before the consent order was presented to the settlement judge. Therefore, our task is to determine whether Mahan's agreement at the close of the settlement conference is the type which should preclude Mahan from later withdrawal of assent. The appropriate inquiry is whether the agreement was made in open court, on the record, and its terms were duly recorded.

VI.

As explained in the detailed procedural history set out earlier, the

---

workers' compensation settlements)*;* Tenn Code Ann. § 34-11-121 (court approval of settlements involving a minor or disabled person). Court approval of a settlement is generally not required, and parties routinely settle litigation without court involvement.

settlement judge in this case relied upon Local Rule 13 and upon Rule 31 of the Tennessee Supreme Court in the procedure he followed. In the order denying the renewed Motion to Set Aside and during the hearing on the motion, the settlement judge made reference to Rule 31. The order is based upon Rule 31, by its own terms. In the hearing, the settlement judge commented, "the Court recognizes that in all fairness, as far as settlements and disputes are concerned since the Supreme Court's rule dealing with this issue, that it's a new day from some of the prior case law." This comment was in response to arguments of counsel based on *Harbour* and its progeny. Having been specifically relied on by the settlement judge, Rule 31 must be examined.

The Supreme Court of Tennessee, in the exercise of its responsibility to supervise the administration of justice in our courts, has adopted procedures "to expedite the efforts of the courts to secure the just, speedy, and inexpensive determination of disputes," which procedures have been promulgated as Rule 31 of the Rules of the Supreme Court.

Rule 31 authorizes trial courts, by order of reference, to order parties to an eligible civil action to participate in a judicial settlement conference, mediation, or case evaluation. Such referral may be made by motion of the court and does not require consent of the parties. The record herein includes an order by the trial judge referring the case to the settlement judge for a settlement conference.

Rule 31 defines "judicial settlement conference" as a mediation conducted by a judicial officer other than the judge before whom the case will be tried. Tenn. R. Sup. Ct. 31 § 2(d). A mediation is "an informal process in which a neutral person, called a mediator, conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute." *Id.* at § 2(c). A judicial officer who acts as a mediator in a judicial settlement conference is, for purposes of that conference and for purposes of alternative

16

dispute resolution, a "dispute resolution neutral." Tenn. R. Sup. Ct. 31 § 2(i).

A dispute resolution neutral, including a judge acting in that capacity, has no authority to dispose of a case or to enter an order disposing of a case. The neutral's powers include only the filing of a report indicating whether the case was completely settled or partially settled. Tenn. R. Sup. Ct. 31 § 8. Therefore Rule 31 did not vest the settlement judge herein, in his role as mediator, with authority to enter an order disposing of the case. Further, although Local Rule 13 by its explicit terms allows entry of a settlement order by the settlement judge, a local rule cannot vest the settlement judge acting as a dispute resolution neutral with authority contradictory to Tenn. R. Sup. Ct. 31. As we have previously stated, we find no other order in the record giving the settlement judge authority to adjudicate or dispose of this case. Since all the parties herein did not sign the consent order, we also cannot find that the parties consented to entry by the settlement judge. Thus, the settlement judge herein had no authority to enter an order disposing of the case.

Further, the nature of and requirements for a judicial settlement conference held pursuant to Rule 31 compel the conclusion that such a conference is not a formal proceeding, is not held in open court, and is not to be conducted on the record. The settlement judge's finding herein that the oral agreement was made in open court referred to the discussion of the terms of the agreement with all counsel and parties present at the conclusion of the mediation. We are not of the opinion, however, that that unrecorded discussion met the formality requirements implied in the phrases "in open court" and "on the record." Furthermore, since the agreement was made in the presence of the dispute resolution neutral (the settlement judge) and not in the presence of a judge with authority to dispose of the case, the agreement cannot be said to have taken place in "open court."

The term "open court" means, in this context, "a court which has been formally convened and declared open for the transaction of its proper judicial business." Black's Law Dictionary 983 (5th ed. 1979). "Record"

17

means "the aggregate of the various judicial steps taken on the trial below, in so far as they were taken, presented, or allowed in the formal and proper manner necessary to put them upon the record of the court" or

> a written memorial of all the acts and proceedings in an action or suit, in a court of record. The official and authentic history of the cause, consisting in entries of each successive step in the proceedings, chronicling the various acts of the parties and of the court, couched in the formal language established by usage, terminating with the judgment rendered in the cause, and intended to remain as a perpetual and unimpeachable memorial of the proceedings and judgment.

Black's Law Dictionary 1438 (rev. 4th ed. 1968) (citing *State v. Brewer*, 19 Ala. App.291, 97 So. 160, 161 (1923)).

We find that Mahan's consent to the oral agreement reached at the mediated judicial settlement conference was subject to withdrawal because it was not made "on the record" or "in open court." [10]

### VII.

We have found that the settlement judge herein was without authority, as a dispute resolution neutral under Tenn. R. Sup. Ct. 31, to enter the Order of Compromise and Settlement disposing of this case. In addition, because we have found that Mahan could withdraw its assent to the previous oral agreement, we also find that the settlement judge was without authority to enter the Order on the basis of *Harbour.* Accordingly, the Order of Compromise and Settlement is vacated. The orders by both the settlement judge and the trial judge denying the motions to set aside are reversed. The trial judge herein is aware that the parties no longer consent to the previous oral agreement and, therefore, is without authority to enter the consent order we have now vacated. Therefore, the case remains unsettled.

Accordingly, we reverse the decision of the trial court. This case is remanded for proceedings consistent with this opinion. Costs of this appeal shall be taxed to the Appellees for which execution may issue.

---

[10] Our holding renders moot Mahan's claim that the Order does not accurately reflect the terms of the prior oral agreement. However, we note that the issues raised by this claim highlight the importance of a record of the details or terms of an oral agreement. The trial judge herein, faced with that claim, had no objective basis upon which to decide the issue. The only evidence of the terms of the agreement is found in the Order of Compromise and Settlement, which was prepared by counsel for one party and entered over objection of the another party. Where there is no record of the terms of the agreement and a dispute exists as to the terms, a court has no basis for entry of an order imposing one version of the terms as a consent order.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
BEN H. CANTRELL,
PRESIDING JUDGE, (M.S)


_____
WILLIAM C. KOCH, JR., JUDGE